IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
IN AND FOR SARASOTA COUNTY

LEN GALE,

    Plaintiff,

vs.

                                                  Case #: 2015-CA-6012

OCWEN LOAN SERVICING, LLC,

    Defendant.

_____/

## SECOND AMENDED COMPLAINT

COMES NOW, the Plaintiff LEN GALE ("*Gale*") by and through his undersigned counsel and files his Second Amended Complaint against, OCWEN LOAN SERVICING, LLC ("*Ocwen*") and in support thereof would show as follows:

### Allegations Common to all Counts

1. This is an action for damages exceeding $15,000.00, exclusive of attorneys' fees, costs and interest.

2. Gale is *sui juris* and owns property in Sarasota County, Florida.

3. At all times material herein Gale was a consumer as defined by 15 U.S.C. §1692 *et. seq.* and Chapter 559, *Florida Statutes, et. seq.*

4. Ocwen is a foreign Limited Liability Company with a principal place of business in West Palm Beach Florida.

5. At all times material herein, Ocwen was a debt collector as defined by 15 U.S.C. §1692a(6) and Chapter 559, *Florida Statutes*.

6. The conduct by Ocwen alleged herein is considered debt collection.

7. A significant portion of the matters alleges herein occurred in Sarasota County Florida.

8. All conditions precedent to filing this action have occurred or have been waived.

## COUNT I -FDCPA VIOLATION

9. Gale incorporates herein all the allegations in 1-8 *supra* as if full set forth herein.

10. On or about October 23, 2015, Ocwen sent correspondence to Gale regarding the Sarasota Debt (**Ex. A**).

11. Exhibit A is an attempt to collect a debt.

12. Ocwen, acting as a debt collector, attempted to collect a debt secured by the property located at 4212 Des Plaines Dr. Sarasota, FL 34233 ("***Sarasota Debt***").

13. The Sarasota Debt is based on a written instrument.

14. The Sarasota Debt was obtained by Ocwen after the debt was in default.

15. Exhibit A seeks to collect a debt stemming from October 2, 2008.

16. Nevertheless, the debt between October 2, 2008 and October 1, 2010 was uncollectable under Florida's Statute of Limitations regarding written agreements.

17. Ocwen's attempt to collect a debt which was barred by the statute of limitations prevented Gale from complying with the repayment of the written agreement.

18. Gale has been damaged by Ocwen's actions which violate 15 U.S.C. §1692 *et. Seq*.

WHEREFORE, LEN GALE, respectfully requests that this Honorable Court enter judgment against OCWEN LOAN SERVICING, LLC for damages, attorneys' fees, costs and interest and such other and further relief deemed just and proper under the circumstances.

## COUNT II- FDCPA VIOLATION

19.     Gale incorporates herein all the allegations in 1-8 *supra* as if full set forth herein.

20.     On or about October 23, 2015, Ocwen sent correspondence to Gale regarding the North Port Debt (**Ex. B**).

21.     Exhibit B is an attempt to collect a debt.

22.     Ocwen, acting as a debt collector, attempted to collect a debt secured by the property located at 4150 Palisades Ave North Port, FL 34287 ("***North Port Debt***").

23.     The North Port Debt is based on a written instrument.

24.     The North Port Debt was obtained by Ocwen after the debt was in default

25.     Exhibit B seeks to collect a debt stemming from October 2, 2008.

26.     Nevertheless, the debt between October 2, 2008 and October 1, 2010 was uncollectable under Florida's Statute of Limitations regarding written agreements.

27.     Ocwen's attempt to collect a debt which was barred by the statute of limitations prevented Gale from complying with the repayment of the written agreement.

28.     Gale has been damaged by Ocwen's actions which violate 15 U.S.C. §1692 *et. seq*.

29.     Gale incorporates herein all the allegations in 1-28 *supra* as if full set forth herein.

WHEREFORE, LEN GALE, respectfully requests that this Honorable Court enter judgment against OCWEN LOAN SERVICING, LLC for damages, attorneys' fees, costs and interest and such other and further relief deemed just and proper under the circumstances.

## COUNT III – TORTIOUS INTERFERENCE

30.     This is an action for tortious interference with a contract.

31. Gale has a contract with Bank United and or GMAC Mortgage, LLC[1] (**Ex. C**) which constitutes a business relationship ("***Relationship***").

32. Ocwen had knowledge of the Relationship.

33. Ocwen intentionally and unjustifiably interfered with the Relationship.

34. Ocwen acted in bad faith or with malice in interfering with the Relationship.

35. Particularly, Ocwen attempted to collect on a debt which was barred by the statute of limitations in an attempt to prevent Gale from curing the alleged default.

36. Ocwen undertook its action in order to accelerate the promissory note and enforce the mortgage via a foreclosure action.

37. Upon information and belief, Ocwen will obtain a financial benefit from foreclosing on Gale's property.

38. Ocwen's actions prevented Gale from curing the alleged default on his mortgage obligation.

39. Gale has been damaged by Ocwen's actions.

WHEREFORE, LEN GALE, respectfully requests that this Honorable Court enter judgment against OCWEN LOAN SERVICING, LLC for damages, attorneys' fees, costs and interest and such other and further relief deemed just and proper under the circumstances

### COUNT IV – VIOLATION OF FLA. STAT. 559.72

40. Gale incorporates herein all the allegations in 1-8 *supra* as if full set forth herein.

41. On or about October 23, 2015, Ocwen sent correspondence to Gale regarding the Sarasota Debt (**Ex. A**).

42. Exhibit A is an attempt to collect a debt.

---

[1] The original lender was Bank United however, GMAC Mortgage, LLC filed an action enforcing the same. See Sarasota Case No: 2009 CA 001044.

43. Ocwen, acting as a debt collector, attempted to collect a debt secured by the property located at 4212 Des Plaines Dr. Sarasota, FL 34233 ("**Sarasota Debt**").

44. The Sarasota Debt is based on a written instrument.

45. The Sarasota Debt was obtained by Ocwen after the debt was in default.

46. Exhibit A seeks to collect a debt stemming from October 2, 2008.

47. Nevertheless, the debt between October 2, 2008 and October 1, 2010 was uncollectable under Florida's Statute of Limitations regarding written agreements.

48. Ocwen's attempt to collect a debt which was barred by the statute of limitations prevented Gale from complying with the repayment of the written agreement.

49. Gale has been damaged by Ocwen's actions which violates Fla. Stat. 559.72(9).

WHEREFORE, LEN GALE, respectfully requests that this Honorable Court enter judgment against OCWEN LOAN SERVICING, LLC for damages, attorneys' fees, costs and interest and such other and further relief deemed just and proper under the circumstances.

## COUNT IV – VIOLATION OF FLA. STAT. 559.72

50. Gale incorporates herein all the allegations in 1-8 *supra* as if full set forth herein.

51. On or about October 23, 2015, Ocwen sent correspondence to Gale regarding the North Port Debt (**Ex. B**).

52. Exhibit B is an attempt to collect a debt.

53. Ocwen, acting as a debt collector, attempted to collect a debt secured by the property located at 4150 Palisades Ave North Port, FL 34287 ("**North Port Debt**").

54. The North Port Debt is based on a written instrument.

55. The North Port Debt was obtained by Ocwen after the debt was in default

56. Exhibit B seeks to collect a debt stemming from October 2, 2008.

57. Nevertheless, the debt between October 2, 2008 and October 1, 2010 was uncollectable under Florida's Statute of Limitations regarding written agreements.

58. Ocwen's attempt to collect a debt which was barred by the statute of limitations prevented Gale from complying with the repayment of the written agreement.

59. Gale has been damaged by Ocwen's actions which violate 15 U.S.C. §1692 *et. seq*.

60. Gale incorporates herein all the allegations in 1-28 *supra* as if full set forth herein.

WHEREFORE, LEN GALE, respectfully requests that this Honorable Court enter judgment against OCWEN LOAN SERVICING, LLC for damages, attorneys' fees, costs and interest and such other and further relief deemed just and proper under the circumstances.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via e-mail to all interested parties on the Florida E-Portal this 16th day of January, 2018.

**FLORIDA TRIAL COUNSEL**

/s/ David Fernandez
David A. Fernandez, Esq.
FBN: 084984
4705 26th Street West
Bradenton, FL 34207
Tel: (941) 877-2015
Fax: 1-866-442-1413
david@fltrialcounsel.com



Ocwen Loan Servicing, LLC
WWW.OCWEN.COM
*Helping Homeowners is What We Do!*™

1661 Worthington Road, Ste 100
West Palm Beach, FL 33409
Toll Free: (800) 746-2936

10/22/2015

Loan Number: 359340893



Len Gale
Po Box 51
Bradenton Beach, FL 34217-0051

Property Address: 4212 Des Plaines Dr
Sarasota, FL 34233

Re: **Delinquency Information**

Dear Len Gale

We are providing the information in this notice because, as of the date of this letter, the above account is delinquent.

**\*\*DELINQUENCY NOTICE\*\***

You are late on your mortgage payments. As of 10/22/15, you are 2577 days delinquent on your mortgage loan. Your account first became delinquent on 10/02/08. Failure to bring your loan current may result in fees and foreclosure – the loss of your home.

Recent Account History
- Payment due 10/01/15: UNPAID AMOUNT OF $810.04
- Payment due 09/01/15: UNPAID AMOUNT OF $810.04
- Payment due 08/01/15: UNPAID AMOUNT OF $810.04
- Payment due 07/01/15: UNPAID AMOUNT OF $810.04
- Payment due 06/01/15: UNPAID AMOUNT OF $810.04
- Payment due 05/01/15: UNPAID AMOUNT OF $810.04

- Total: $93138.93. You must pay this amount to bring your loan current. <u>Please note that the Total Amount Due includes your next regular monthly payment.</u>
This amount may not include all fees and charges, as all fees and charges may not have been billed or posted to your account as of the letter date. Please contact us for your current reinstatement amount or payoff amount.

If You Are Experiencing Financial Difficulty: If you are experiencing financial difficulties and would like counseling or assistance, you can contact the U.S. Department of Housing and Urban Development (HUD). For a list of homeownership counselors or counseling organizations in your area, go to www.hud.gov/offices/hsg/sfh/hcc/hccs.fm or call 800-569-4287.

MADNRM

NMLS # 1852
*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*

Page 1 of 2

Exhibit A

 **Ocwen Loan Servicing, LLC**
WWW.OCWEN.COM
*Helping Homeowners is What We Do!*™

1661 Worthington Road, Ste 100
West Palm Beach, FL 33409
Toll Free: (800) 746-2936



Should you have any questions or concerns, or believe an error has occurred, please contact us immediately 800-746-2936. We are available to assist you Monday through Friday 8:00 am to 9:00 pm ET, Saturday 8:00 am to 5:00 pm ET, and Sunday 9:00 am to 9:00 pm ET.

If you would like to submit a qualified written request, a notice of error, or a request for information, you must use the following address:

Research Department, P.O. Box 24736, West Palm Beach, Florida 33416-4736.

If you have any further questions regarding this letter, your account or options that we may have available, you may schedule an appointment with your Home Retention Specialist, , by contacting us at (800) 746-2936, is your designated contact for inquiries and the submission of documents as needed.

Sincerely,
Ocwen Loan Servicing, LLC

> **Please Note:** This is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you have an active bankruptcy case or have received an Order of Discharge from a Bankruptcy Court, the following Notice Regarding Bankruptcy applies.
>
> **Notice Regarding Bankruptcy:** Please be advised that if you are part of an active Bankruptcy case or if you have received an Order of Discharge from a Bankruptcy Court, this letter is in no way an attempt to collect either a pre-petition, post petition or discharged debt. If your bankruptcy case is still active, no action will be taken in willful violation of the Automatic Stay. If you have received an Order of Discharge in a Chapter 7 case, any action taken by us is for the sole purpose of protecting our lien interest in the underlying mortgaged property and is not an attempt to recover any amounts from you personally. Finally, if you are in an active Chapter 11, 12 or 13 bankruptcy case and an Order for Relief from the Automatic Stay has not been issued, you should continue to make payments in accordance with your plan.

NMLS # 1852                                                                                                                    MADNRM

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*



**Ocwen Loan Servicing, LLC**
WWW.OCWEN.COM
*Helping Homeowners is What We Do!*™

1661 Worthington Road, Ste 100
West Palm Beach, FL 33409
Toll Free: (800) 746-2936

10/23/2015

Loan Number: 7140139846



Len Gale
Po Box 51
Bradenton Beach, FL 34217-0051

Property Address: 4150 Palisades Ave
North Port, FL 34287

### Re: Delinquency Information

Dear Len Gale

We are providing the information in this notice because, as of the date of this letter, the above account is delinquent.

**\*\*DELINQUENCY NOTICE\*\***

You are late on your mortgage payments. As of 10/22/15, you are 2577 days delinquent on your mortgage loan. Your account first became delinquent on 10/02/08. Failure to bring your loan current may result in fees and foreclosure – the loss of your home.

Recent Account History

- Payment due 10/01/15: UNPAID AMOUNT OF $515.15
- Payment due 09/01/15: UNPAID AMOUNT OF $515.15
- Payment due 08/01/15: UNPAID AMOUNT OF $515.15
- Payment due 07/01/15: UNPAID AMOUNT OF $515.15
- Payment due 06/01/15: UNPAID AMOUNT OF $515.15
- Payment due 05/01/15: UNPAID AMOUNT OF $515.15

- Total: $67369.41. You must pay this amount to bring your loan current. Please note that the Total Amount Due includes your next regular monthly payment.
This amount may not include all fees and charges, as all fees and charges may not have been billed or posted to your account as of the letter date. Please contact us for your current reinstatement amount or payoff amount.

Your account has been referred to an attorney to foreclose. The first step in this process, the first filing, was completed.

If You Are Experiencing Financial Difficulty: If you are experiencing financial difficulties and would like counseling or assistance, you can contact the U.S. Department of Housing and Urban Development (HUD). For a list of homeownership counselors or counseling organizations in your area, go to www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or call 800-569-4287.

NMLS # 1852
MADNREM

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*

Exhibit B



**Ocwen Loan Servicing, LLC**
WWW.OCWEN.COM
*Helping Homeowners is What We Do!*™

1661 Worthington Road, Ste 100
West Palm Beach, FL 33409
Toll Free: (800) 746-2936

Should you have any questions or concerns, or believe an error has occurred, please contact us immediately 800-746-2936. We are available to assist you Monday through Friday 8:00 am to 9:00 pm ET, Saturday 8:00 am to 5:00 pm ET, and Sunday 9:00 am to 9:00 pm ET.

If you would like to submit a qualified written request, a notice of error, or a request for information, you must use the following address:

Research Department, P.O. Box 24736, West Palm Beach, Florida 33416-4736.

If you have any further questions regarding this letter, your account or options that we may have available, you may schedule an appointment with your Home Retention Specialist, Wanda Camacho, by contacting us at (800) 746-2936. Wanda Camacho is your designated contact for inquiries and the submission of documents as needed.

Sincerely,
Ocwen Loan Servicing, LLC

> Please Note: This is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you have an active bankruptcy case or have received an Order of Discharge from a Bankruptcy Court, the following Notice Regarding Bankruptcy applies.
>
> Notice Regarding Bankruptcy: Please be advised that if you are part of an active Bankruptcy case or if you have received an Order of Discharge from a Bankruptcy Court, this letter is in no way an attempt to collect either a pre-petition, post petition or discharged debt. If your bankruptcy case is still active, no action will be taken in willful violation of the Automatic Stay. If you have received an Order of Discharge in a Chapter 7 case, any action taken by us is for the sole purpose of protecting our lien interest in the underlying mortgaged property and is not an attempt to recover any amounts from you personally. Finally, if you are in an active Chapter 11, 12 or 13 bankruptcy case and an Order for Relief from the Automatic Stay has not been issued, you should continue to make payments in accordance with your plan.

NMLS # 1852                                                                                               MADNREM
*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*

# BankUnited
## Adjustable Rate Rider
(1 Year MTA Index – Initial Discounted Monthly Payment –
Payment Caps and Maximum Rate)
(1 Month MTA ARM)

THIS ADJUSTABLE RATE RIDER is made this 28th day of August 2006 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note, as modified or amended (the "Note") to THE LOAN CORPORATION DBA DOLLAR REALTY MORTGAGE

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

4212 PLAINES DRIVE
SARASOTA, FL 34233

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, MY MONTHLY PAYMENT, AND THE PRINCIPAL BALANCE. MY MONTHLY PAYMENT INCREASES MAY BE LIMITED. BOTH MY MAXIMUM INTEREST RATE AND MINIMUM INTEREST RATE ARE LIMITED. MY INITIAL REQUIRED MONTHLY PAYMENT AMOUNT WILL NOT BE SUFFICIENT TO PAY THE INTEREST THAT ACCRUES UNDER THE NOTE. THE PRINCIPAL BALANCE OF THE NOTE MAY INCREASE TO AN AMOUNT THAT IS LARGER THAN THE AMOUNT THAT I ORIGINALLY BORROWED.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for changes in the interest rate and the monthly payments, as follows:

"2. INTEREST
(A) Interest Rate
Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 8.1250 %. The interest rate I will pay will change as provided in this Section 2.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

(B) Interest Change Dates
The interest rate I will pay may change on the first day of October 2006 and on that same day every month thereafter. Each date on which my interest rate could change is called an "Interest Change Date".

(C) Interest Rate Limits
My interest rate will never be greater than 9.9500 %. My interest rate will never be less than the amount of the then applicable Margin described in Section 2(E) below.

(D) Index
Beginning with the first Interest Change Date, my interest rate will be based on an Index. The "Index" is the Twelve Month Average of the monthly yields (the "Monthly Yields") on actively traded United States Treasury securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Statistical Release entitled "Selected Interest Rate (H.15)." The Twelve-month Average is determined by adding together the Monthly Yields for the most recently available twelve months, dividing that sum by 12, and then rounding the resulting number to four decimal places. The most recent Index figure available as of the date 15 days before each Interest Change Date is called the "Current Index."

If the Index, or any substitute Index, is no longer available, the Note Holder will choose a new Index which is based upon comparable information. The Note Holder will give me notice of this choice.

(E) Calculation of Interest Rate Changes
Before each Interest Change Date, the Note Holder will calculate my new interest rate by adding Three and 6100/10000 percentage points ( 3.6100 %) (the "Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 2(C) above, the rounded amount will be my new interest rate, which will become effective on the Interest Change Date. That interest rate will remain in effect until the next Interest Change Date.

In the event a new Index is selected in accordance with Section 2(D) above, a new Margin may be established. The new Index and Margin will result in an interest rate that is substantially similar to the interest rate that was in effect at the time that the old Index became unavailable.

Multistate Adjustable Rate Rider – 1 Year MTA Index – Initial Discounted Monthly Payment – Payment Caps and Maximum Rate – Monthly Rate Change

Page 1 of 3

Initials: _____

MFCD5084                                                  0005030069

Exhibit C

(A) Time and Place of Payments
I will make my monthly payments on the first day of every month, beginning on   October 2006
. I will make a payment every month until I have paid all of the Principal and Interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on September 1, 2046
, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".
I will make monthly payments at 4890 WEST KENNEDY BOULEVARD #260, TAMPA, FL 33609

or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payment
My initial monthly payment will be in the amount of U.S. $ 700.96            . My initial monthly payment was calculated using a rate of 1.7000   %, the original Principal, and the Maturity Date. This rate is lower than the initial interest rate stated in Section 2(A) above.
The amount of my initial monthly payment will change as provided in this Section 3.

(C) Payment Change Dates
My monthly payment will change as required by Section 3(D) below beginning on the due date of my thirteenth (13th) payment, which is due on October 1, 2007
and on that same day every twelfth (12th) month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment will also change as provided under Section 3(F) below.
I will pay the amount of my new monthly payment each month beginning on each Payment Change Date until the next Payment Change Date, unless my monthly payments are changed earlier as provided in Section 3(F) below.

(D) Calculation of Monthly Payment Changes; Limitations
On each Payment Change Date, my monthly payment will change to the amount that would be sufficient to repay the Principal that I am expected to owe at the Payment Change Date, together with interest at the rate in effect during the preceding month, in full in substantially equal monthly installments through the Maturity Date. However, unless Section 3(F) or Section 3(G) below apply, the amount of my new monthly payment, beginning on each Payment Change Date, will be limited to an amount that is no more than 7 1/2% greater than the amount I am required to pay under this Note immediately prior to that Payment Change Date. The Note Holder's monthly billing statement may disclose other payment options that I may have, if I should wish to pay a monthly payment that is larger than this amount.

(E) Changes In My Unpaid Principal
My initial required monthly payment amount will not be sufficient to pay the interest that will accrue under this Note at the initial interest rate stated in Section 2(A) of this Note, and may be lesser or greater than the amount sufficient to pay the interest that will accrue under this Note at the interest rates that thereafter are in effect under this Note. In addition, since my monthly payment amount changes less frequently than the interest rate and since the monthly payment is subject to the payment limitations described in Section 3(D) above, my subsequent monthly payments could be lesser or greater than the amount sufficient to pay the interest that will accrue under this Note at the interest rates that are in effect under this Note from time to time. For each month that my monthly payment is less than the interest that accrues under this Note, the Note Holder will subtract the monthly payment from the amount of the accrued interest and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate that is in effect under this Note from time to time. For each month that the monthly payment is greater than the interest that accrues under this Note, the Note Holder will apply the excess towards a Principal reduction of this Note.

(F) Limit on My Unpaid Principal; Increased Monthly Payment
My unpaid Principal can never exceed a maximum amount equal to 115% of the ... originally borrowed. In the event my unpaid Principal would otherwise exceed that ... monthly payment due date, I will begin paying a new monthly payment on that d... to make this payment each month until the next Payment Change Date, subject at all times to a further increase in my monthly payment under this Section 3(F) if my unpaid Principal would again otherwise exceed the 115% limitation. The new monthly payment will be the amount that would be ... to repay my then unpaid Principal, together with interest at the rate in effect during the ... payment due date, in full in substantially equal monthly installments through the Maturity Date. ... monthly payment will be determined without applying the 7 1/2% payment limitation described in Section 3(D) of this Note.

(G) Required Full Monthly Payment
On the 5th Payment Change Date, on each succeeding 5th Payment Change Date thereafter, and on the final Payment Change Date, the monthly payment will be determined without regard to the 7 1/2% payment limitation described in Section 3(D) of this Note.

4.  NOTICE OF CHANGES
The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me, and also the title and telephone number of a person who will answer any question I may have regarding the notice."

B.  TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER
Uniform Covenant 18 of the Security Instrument is amended to read, in its entirety, as follows:

"Transfer of the Property or a Beneficial Interest In Borrower. As used in this Section 18, 'Interest in the Property' means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed,

NFCD5034
Multistate Adjustable Rate Rider – 1 Year MTA Index – Initial Discounted Monthly Payment – Payment Caps and Maximum Rate – Monthly Rate Change
Page 2 of 3                                                                                  Initials: ___

contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee, and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower."

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 3 of this Adjustable Rate Rider.

_____ (Seal)    _____ (Seal)
LEN GALE                 -Borrower                              -Borrower

_____ (Seal)    _____ (Seal)
                         -Borrower                              -Borrower

_____ (Seal)    _____ (Seal)
                         -Borrower                              -Borrower

[Sign Original Only]

MFCD5084                                                    000503006-9

Multistate Adjustable Rate Rider – 1 Year MTA Index – Initial Discounted Monthly Payment – Payment Caps and Maximum Rate –
Monthly Rate Change
                                    Page 3 of 3                        Initials: ___

# 1-4 FAMILY RIDER
(Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 28th day of August 2006, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to **THE LOAN CORPORATION DBA DOLLAR REALTY MORTGAGE**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**4212 PLAINES DRIVE
SARASOTA, FL 34233**
[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases

MULTISTATE 1-4 FAMILY RIDER—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3170 1/01
ITEM 1790L1 (0411)   (Page 1 of 3 pages)   GreatDocs™
MFCD2063   To Order Call 1-800-968-5775
000503006-9

of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

H. **ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

I. **CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

MULTISTATE 1-4 FAMILY RIDER—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3170 1/01

ITEM 1790L2 (0411)                          *(Page 2 of 3 pages)*            GreatDocs™
MFCD2063                                                     To Order Call: 1-800-968-5775
                                                                 000503006-9

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 3 of this 1-4 Family Rider.

_____ (Seal)        _____ (Seal)
LEN GALE                -Borrower                              -Borrower

_____ (Seal)        _____ (Seal)
                        -Borrower                              -Borrower

_____ (Seal)        _____ (Seal)
                        -Borrower                              -Borrower

MULTISTATE 1-4 FAMILY RIDER—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT         Form 3170 1/01
                                                                              GreatDocs™
ITEM 1790L3 (0411)           (Page 3 of 3 pages)                   To Order Call 1-800-968-5775
MFCD2063                                                                   000503006-9